IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| THERMO-PLY, INC., | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 1:13-CV-00652-RC |
| THE OHIO WILLOW WOOD COMPANY, and BRUCE KANIA, | ) |
| Defendants. | ) |

**PLAINTIFF, THERMO-PLY, INC.' S, RESPONSE MEMORANDUM IN OPPOSITION TO DEFENDANT, BRUCE KANIA'S, MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE; AND <u>PLAINTIFF'S REQUEST FOR ORAL HEARING</u>**

Pursuant to Local Rule CV-7 (d) and (g), Plaintiff, Thermo-Ply, Inc. ("Thermo-Ply"), respectfully submits this Response Memorandum in Opposition to the Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (the "Motion") filed by Defendant Bruce Kania ("Kania") (Dkt. No. 18) ("Kania's Dismiss"), and requests oral hearing regarding Kania's Motion, this response and any related filings.

### I. INTRODUCTION

Kania, who voluntarily appeared and testified before this Court in 2009, now seeks to evade the Court's renewed scrutiny of his conduct. All of Kania's objections to this Court set out in Kania's Motion are baseless and should be rejected. Kania's first argument, that the "first-to-file" rule mandates dismissal, transfer, or stay of this action, wholly ignores the fact *this action is the first and only filed action involving Kania.* Kania cites no authority providing that the "first-to-file" rule may be invoked by a party to only one lawsuit.

Kania's second basis for dismissal fares no better and is founded on a false representation to this Court. Kania has had more contact with Texas than the two he cites in his Motion and swears to in his declaration. Further, venue is proper because a "substantial" part of the activities underlying Thermo-Ply's claim against Kania occurred in this district. Finally, bearing in mind the "particular respect" courts pay to the plaintiff's choice of venue in an antitrust action, and Kania's failure to establish that the Southern District Court of Ohio is a "clearly more convenient" venue, this action should not be transferred under 28 U.S.C. §1404(a).

## II. THE PENDING CASE BETWEEN OWW AND THERMO-PLY IN OHIO, AND THIS ACTION BETWEEN THERMO-PLY, OWW, AND KANIA

### A. The Ohio Case

On September 3, 2013, The Ohio Willow Wood Company ("OWW") filed, but did not serve, its one-count complaint against Thermo-Ply in the U.S. District Court for the Southern District of Ohio alleging infringement of U.S. Patent No. 8,523,951 (the "'951 Patent")(the "Ohio Case"). OWW did not serve the complaint on Thermo-Ply in the Ohio Case until *after* Thermo-Ply filed and served the Complaint in this case. Thermo-Ply subsequently moved to dismiss the Ohio Action for lack of personal jurisdiction and improper venue. Thermo-Ply also moved alternatively to transfer venue to this Court under 28 U.S.C. §1406(a).[1]

The Southern District Court of Ohio recently denied OWW's motion to take jurisdictional discovery after expressly finding that OWW "has no evidence that Thermo-Ply's liners have been sold by Thermo-Ply or third parties in Ohio." *See* Plaintiff's Notice of Filing in Support of Plaintiff's Response and Sur-Reply in Opposition to Defendant The Ohio Willow

---

[1] A copy of Thermo-Ply's Motion to Dismiss, Alternative Motion to Transfer filed in the Ohio Action, *The Ohio Willow Wood Company v. Thermo-Ply, Inc.*, U.S. District Court, Southern District of Ohio, Eastern Division, Case. No. 2:13-cv-00861, and exhibits thereto, is attached to this Memorandum as Composite Exhibit A.

Wood Company's Motion to Dismiss, Or Alternatively Transfer, or Stay (Dkt. No. 24). The court in the Ohio Case also stayed that case until Thermo-Ply's Motion to Dismiss and Alternative Motion to Transfer Venue to this Court is decided.

Critically, Kania is <u>not</u> a party to the Ohio Case. Moreover, this case involves three OWW patents, in addition to the '951 Patent, the sole patent being asserted by OWW against Thermo-Ply in the Ohio Case.

### B. The Eastern District of Texas Action

On October 30, 2013, Thermo-Ply filed this case against OWW and Kania asserting violations of Sections 1 and 2 of the Sherman Act based on the defendants' predatory, anticompetitive, and exclusionary conduct with the specific intent of monopolizing the market for fabric covered thermoplastic gel liners (the "Fabric Covered Gel Liners").

Thermo-Ply's Complaint alleges that, as part of its anticompetitive conduct, OWW fraudulently procured U.S. Patent No. 7,291,182 (the "'182 Patent"), U.S. Patent No. 5,830,237 (the "'237 Patent"), U.S. Patent No. 6,964,688 (the "'688 Patent"), and the '951 Patent (collectively, "OWW's Fraudulently Obtained Patents"). Kania is the named inventor on all four (4) of the patents at issue in this case.

The Complaint specifically alleges that OWW, Kania, and OWW's attorneys engaged in a scheme consisting of filing and prosecuting applications in the U.S. Patent and Trademark Office (the "PTO") and deliberately and intentionally made fraudulent misrepresentations and omissions before the PTO in order to procure and maintain those patents. Cmplt., Dkt. No. 1, at paras. 28-29. The Complaint also alleges that, but for OWW and Kania's fraudulent misrepresentations and omissions, OWW's Fraudulently Obtained Patents would not have been issued or would have been invalidated earlier. Cmplt., Dkt. No. 1, at para. 30. After those

patents issued, OWW illegally restrained trade and obtained a monopoly in the market for Fabric Covered Gel Liners by initiating and prosecuting numerous infringement lawsuits involving OWW's Fraudulently Obtained Patents. OWW filed one such lawsuit before this very Court, alleging that Thermo-Ply had infringed the '182 Patent.[2] Kania participated in OWW's antitrust scheme, assisted OWW in enforcing the '182 Patent against Thermo-Ply, and voluntarily appeared and testified before this Court. This Court ultimately entered summary judgment against OWW and in favor of Thermo-Ply finding that OWW's patent (on which Kania is the named inventor) was invalid due to obviousness. The Federal Circuit unanimously affirmed this Court's judgment.

### III.  ARGUMENT AND CITATION OF AUTHORITY

#### A.  Kania is Not a Party to the Action He Asserts is the First-Filed Action

Kania's first argument to dismiss this case, premised on the first-to-file rule, is fundamentally flawed. ***No parallel proceedings involve Kania and Thermo-Ply***. This action is the first, and only, action involving Kania and Thermo-Ply. Kania cites no authority holding that a party to only one action may invoke the "first-to-file" rule to dismiss, transfer, or stay the action in favor of a lawsuit involving other parties, but not the movant. Because Kania merely incorporates the arguments raised by OWW in its Motion to Dismiss, or Alternatively Transfer, or Stay (Dkt. No. 6 at pp. 5-8), Thermo-Ply opposes those arguments by likewise incorporating its response set forth in Plaintiff, Thermo-Ply, Inc.'s Memorandum in Opposition to Defendant, The Ohio Willow Wood Company's Motion to Dismiss, or Alternatively Transfer, or Stay and Plaintiff's Request for Oral Hearing (Dkt. No. 11 at pp. 5-12).

---

[2] *The Ohio Willow Wood Co. v. Thermo-Ply, Inc.,* Case No. 9:07-cv-00274 (the "'182 Case")

### B. This Court Has Personal Jurisdiction Over Kania

Kania's attempts to cast himself as a mere inventor whose only contacts with Texas consist of three (3) visits. Kania's sworn statement in this regard is both false and wholly ignores the vital role he played in the scheme to defraud the PTO, this Court, and other federal courts. Kania was involved at all stages of the defendants' fraudulent scheme.

First, Kania initiated contact with OWW, and solicited OWW's assistance in procuring patent protection for his so-called inventions, including all the patents at issue in this Case. (*See*, Composite Exhibit B, 2006 Kania Deposition, p. 20, lines 21-22).[3] Kania did so with the intent that OWW would sue companies in the industry for infringement of those patents.

Second, although Kania assigned the rights to his claimed inventions to OWW, Kania has testified to his direct involvement with OWW's prosecution of patent applications for those supposed inventions. Kania had "regular conversations" with the attorney prosecuting the application for the '237 Patent. (2006 Kania Depo., at p. 147, line 23 through p. 148, line 1). Kania testified that "odds are it was" his idea to apply for the '237 Patent. (2006 Kania Depo., at p. 126, lines 18-22). Kania attended a meeting with the PTO examiner wherein false misrepresentations were made about a prior art reference, the Silipos Silosheath, for purposes of distinguishing Kania's so-called invention from the prior-art Silosheath.[4] (2006 Kania Depo., at p. 182, line 4 through pg. 184, line 13)

---

[3] Attached hereto as Composite Exhibit B are various excerpts from the deposition of Bruce Kania taken January 18, 2006, in *The Ohio Willow Wood Company v. ALPS South Corporation*, U.S. District Court, Southern District of Ohio, Eastern Division, Case No. C2-04-001223, hereinafter referred and cited to as "2006 Kania Depo."

[4] The Silosheath played a critical role in this Court's decision to invalidate the '182 Patent based on obviousness. *The Ohio Willow Wood Co. v. Thermo-Ply, Inc.* 2009 WL 6499349 (E.D. Tex., Nov. 20, 2009, Case No. 9:07-cv-00274)

Third, Kania testified that he "decided", along with his attorney and OWW, to remove three (3) of the initial inventors from one of the applications for OWW's Fraudulently Procured Patents[5], which act is specifically alleged in the Complaint to be one of the acts forming Kania, OWW, and OWW's attorneys' fraudulent scheme before the PTO to procure patents. Cmplt, Dkt. No. 1, at para. 65.

Fourth, contrary to Kania's categorical statement that he "has not sued anyone for infringement of any patent,"[6] Kania has not only sued a company for patent infringement, ***Kania sued for infringement of the very first patent he assigned to OWW, which patent claims subject matter related to the inventions claimed in the '182 Patent, the '237 Patent, the '688 Patent, and the '951 Patent.*** Specifically, in 1999, Kania and OWW sued TEC® Interface Systems in the U.S. District Court for the District of Montana for infringement of U.S. Patent No. 5,603,122 (the "'122 Patent").[7] Further, Kania has testified he is required to participate in any litigation OWW brings on at least the '237 Patent under an agreement he has with OWW. (2006 Kania Depo. at p. 77, lines 6-9).

Kania's participation with OWW in the anticompetitive scheme has direct contact with Texas which supports the assertion of personal jurisdiction over him.

### 1. Personal jurisdiction standards

In the Fifth Circuit, a federal court may assume personal jurisdiction over a non-resident defendant if: (1) the forum state's long arm statute confers personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction does not offend the Due Process Clause

---

[5] 2006 Kania Depo. at p. 133, line 23 – p. 135, line 1.
[6] Defendant Bruce Kania's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, Dkt. No. 18 at p. 2.
[7] A copy of that complaint, *Bruce Kania and Ohio Willow Wood Company v. TEC® Interface Systems*, U.S. District Court, District of Montana, Billings Division, Case No. CV-99-00016, is attached hereto as Exhibit C.

of the Fourteenth Amendment. *McFadin v. Gerber,* 587 F.3d 753, 759 (5th Cir. 2009). Because the Texas long arm statute extends personal jurisdiction to the limits of the Due Process Clause, the two inquiries fold into one. *Id.*; Tex. Civ. Prac. & Rem. Code § 17.042.

The defendant must have "meaningful 'contacts, ties, or relations' with the forum state" to be subject to personal jurisdiction in Texas. *Brooks & Baker, L.L.C. v. Flambeau, Inc.*, 2011 WL 4591905, *2 (E.D. Tex. Sept. 30, 2011). If the defendant has "continuous and systematic general business contacts" with the state, then a court may properly exercise what is known as "general jurisdiction" over any action brought against the defendant. *Helicopteros Nactinoales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415, 104 S.Ct. 1868 (1984).

If the contacts are "less pervasive," the federal court may still exercise "specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414. Specific jurisdiction may be established "by a showing that the defendant has 'minimum contacts' with the forum state such that imposing a judgment would not 'offend traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.SA. 310, 316, 66 S.Ct. 154 (1945). "Minimum contacts" are established by showing "some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

In analyzing whether the defendant's contacts satisfy due process concerns, courts engage in a three-step inquiry: "whether the defendant … purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related

contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Nuovo Pignone v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002).

Specific jurisdiction is established where, as here, a nonresident's contacts with the forum state arise from, or are directly related to, the cause of action asserted by the plaintiff. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). A single act may be sufficient to confer specific jurisdiction if the act gives rise to the claim being asserted. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418-19 (5th Cir. 1993); *see also Wien Air*, 195 F.3d at 211 ("[A] single act … directed toward Texas that gives rise to a cause of action by [plaintiff] can support a finding of minimum contacts."). When the contact – even a single communication – with the forum "gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air*, 195 F.3d at 213; *see also TIG Ins. Co. v. NAFCO Ins. Co., Ltd.*, 177 F. Supp. 2d 561, 566 (N.D. Tex. 2001).

The defendant's physical entry into the forum state or actual conduct in the forum (which exists here) is not required; the defendant's tortious contacts with the forum may be made solely by mail (electronic, paper, fax) or phone. *Burger King*, 471 U.S. at 476; *Wien Air*, 195 F.3d at 213; *see also Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001)(explaining that nonresident's tortious activity in another state that is intentionally aimed at Texas may subject the nonresident defendant to personal jurisdiction).

With regard to the level of proof required, a "plaintiff need not … establish personal jurisdiction by a preponderance of the evidence; a prima facie showing suffices." *Brooks & Baker*, 2011 WL 4591905 at *3. Moreover, a "court must resolve all undisputed facts, as well as all facts contested in the affidavits, in favor of jurisdiction." *Id.*

### 2. Kania's Contacts With Texas

#### a. Kania voluntarily presented sworn testimony for two days before this Court in Beaumont, Texas

Kania's Motion attempts to downplay his testimony before this Court. The Court should not be convinced. Kania's two (2) days of testimony was part of an enforcement action OWW asserted against Thermo-Ply involving one of OWW's Fraudulently Obtained Patents. Kania was the named inventor on that now-invalidated patent and Kania's testimony is a predicate act underlying Thermo-Ply's *Walker Process* antitrust claim. Importantly, Kania *voluntarily* testified – he was ***not*** subpoenaed – for two (2) days to defend one of OWW's Fraudulently Obtained Patents, the '182 Patent. Thermo-Ply's *Walker Process* antitrust claim arises, in part from OWW and Kania's prosecution and enforcement of the '182 Patent.

The case Kania relies on in arguing that mere testimony in a forum is insufficient to confer jurisdiction, *Kimberely-Clark Worldwide, Inc. v. Fameccanica Data Spa*, 2011 WL 2634287 (E.D. Wisc. July 5, 2011), is readily distinguishable. The excerpt cited by Kania establishes that the plaintiff's claim was unrelated to the witnessess' testimony. *See* Kania's Motion to Dismiss, Dkt. No. 18, at p. 9. The testimony in the case relied on by Kania had, "[a]t best" a "tangential relationship" to plaintiff's claims. *Kimberely-Clark*, 2011 WL 2634287 at *5.

Kania's testimony is substantially more related to Thermo-Ply's claim as it is part of the predicate acts underlying the *Walker Process* antitrust claim, namely Kania's participation in the enforcement of the '182 Patent--one of OWW's Fraudulently Obtained Patents at issue here.

#### b. Kania's contacts and communications with a business partner and prosthetist in Ft. Worth and Houston, Texas from 1993 Through at Least October 7, 2008

Kania's own sworn testimony betrays the falsity of his sworn assertion to this Court that his sole contacts with Texas were three visits. Specifically, Kania's live testimony before this

Court in the '182 Case, his deposition testimony taken in the '182 Case, and deposition testimony taken in another patent infringement action pending before another federal court evidence that Kania's has had *far* more significant, and sustained, contact with Texas than merely the three visits he claims in his Motion to Dismiss and swears to in his declaration.

Indeed, Kania utterly failed to disclose to this Court in his Motion to Dismiss, the numerous and sustained contacts and communications with a Texas resident, Tim Goldberg.[8] Kania has repeatedly contacted and had various business dealings with Mr. Goldberg, a prosthetist who was living in Ft. Worth[9] and then later, Houston, Texas, over at least a 15-year period (1993 through at least October 7, 2008). Kania's own sworn testimony, before swearing to this Court he has no contacts with Texas other than testifying at a hearing in the earlier Eastern District of Texas action and visiting one personal friend in Sadler, Texas, shows:

- **Kania started communicating with Goldberg in Texas as early as October, 1993** (2008 Kania Depo. at p. 285, lines 7-15; p. 294, lines 6-15);

- **Kania sent some cushion socks he was developing in October, 1993 to Goldberg to test.** (2008 Kania Depo. at p. 285, lines 7-15; p. 294, lines 6-15)(those cushion socks are related to the inventions Kania claimed in OWW's Fraudulently Obtained Patents at issue in this case);

- **During the hearing before this Court in the '182 Case, OWW introduced into evidence as Exhibit 7, a letter sent from Kania to Goldberg in Texas, dated November 9, 1993, wherein Kania explains to Goldberg that he is enclosing "'thinner' cushion socks for [Goldberg's] inspection."**[10] *See* Exhibit 7 (originally marked as Kania Depo. Exhibit 35) contained at the end of Composite Exhibit E attached hereto;

---

8   Attached hereto as Composite Exhibit D are various excerpts from the deposition of Bruce Kania taken October 7, 2008, in *The Ohio Willow Wood Company v. Thermo-Ply, Inc.*, U.S. District Court, Eastern District of Texas, Lufkin Division, Case No. 9:07-cv-00274, hereinafter referred and cited to as "2008 Kania Depo."
9   2008 Kania Depo. at p. 26, lines 6-11.
10   Attached hereto as Composite Exhibit E are various excerpts from Volume 1 of the February 26, 2009 hearing transcript conducted in *The Ohio Willow Wood Company v. Thermo-Ply, Inc.*, U.S. District Court, Eastern District of Texas, Lufkin Division, Case No. 9:07-cv-00274, hereinafter referred and cited to as "February 2009 Hearing, Vol. 1".

- **Goldberg helped Kania develop the "cushion liner" that Kania claims as his invention in OWW's Fraudulently Procured Patents**

    Q: When was the first time you became aware of a prosthetic device called a 'cushion liner'?
    A: I don't recall for sure. But I think that was a name that we used relative to prototypes developed here.
    Q: When you say 'we used relative to prototypes developed here', who is the 'we', to begin with?
    A: Myself and my associates.
    Q: And who were your associates?
    A: This would include ….Tim Goldberg.

    (2008 Kania Depo. at p. 95, line 19 through p. 96, line 7);

- **Kania had Goldberg execute a non-disclosure agreement before sending the cushion socks to Texas for Goldberg to test** (2008 Kania Depo. at p. 285, lines 16-20; p. 294, lines 18-23);

- **Kania's patent search before filing the application for the '237 Patent consisted of, among other things, communications with Goldberg, who was in Houston, Texas** (2006 Kania Depo. at p. 127 – 130);

- **Goldberg has sent socket interfaces (a term that includes prosthetic liners) to Kania for Kania's review over the last several years** (2008 Kania Depo. at p. 116, lines 4-13);

- **Goldberg is a prosthetist, who saw Kania as a patient** (2008 Kania Depo. at p. 112, line 20 to p. 113, line 17); as well as **Kania's partner and friend** (2008 Kania Depo. at p. 26, lines 6-7);

- **Kania stayed in touch with Goldberg, a Texas resident, even as of October 7, 2008** (2008 Kania Depo. at p. 27, lines 12-14);

- **Goldberg "invested" in Kania** (February 2009 Hearing, Vol. 1, at p. 158, lines 11-12); and

- **Goldberg is one of Kania's partners in Kania's company, Fountainhead**. (2006 Kania Depo. at p. 13, lines 2-6)

OWW pays royalties on OWW's Fraudulently Obtained Patents to Fountainhead, who, in turn, distributes the royalties to the partners, which include Mr. Goldberg.[11] (February 2009 Hearing, Vol. 2, p. 224, line 17 through p. 225, line 8). It is hard to imagine Kania innocently forgot to tell this Court about someone he considered so important in developing and marketing the inventions claimed in OWW's Fraudulently Procured Patents that Kania named him a partner in the very venture that profits from the royalties OWW pays to Kania for those patents.

### 2. Kania's Contacts With Texas Satisfy Constitutional Specific Jurisdiction Standards

Kania clearly and purposefully directed his activities toward Texas. Kania's admitted sustained contacts and communications with Mr. Goldberg, starting in October, 1993 and continuing through at least October, 2008, coupled with Kania sending test samples to Mr. Goldberg in Texas and making Mr. Goldberg a partner in Kania's company that receive royalties for OWW's Fraudulently Obtained Patents at issue, shows that Thermo-Ply's *Walker Process* anti-trust claim on the '182 Patent (which is a continuation of the application resulting in the '237 Patent) arises out or, or results from, Kania's contacts with Texas. Because Kania's contacts with Texas relate to not only the prosecution of at least one of OWW's Fraudulently Obtained Patents, but also the enforcement of one of OWW's Fraudulently Obtained Patents, and are numerous and continuous, it would be both fair and reasonable for this Court to exercise specific personal jurisdiction over Kania.

### C. Venue is Proper Before the Eastern District Court of Texas

---

11   Attached hereto as Composite Exhibit F are various excerpts from Volume 2 of the February 27, 2009 hearing transcript in *The Ohio Willow Wood Company v. Thermo-Ply, Inc.*, U.S. District Court, Eastern District of Texas, Lufkin Division, Case No. 9:07-cv-00274, hereinafter referred and cited to as "February 2009, Vol. 2".

Kania failed to carry his burden to establish that venue here is improper under 28 U.S.C. § 1391 (b)(2)[12]. Under that section, venue may lie in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." For venue to be proper, the activities in the challenged venue do not have to be "more substantial" or the "most substantial." *Texas Marine & Brokerage, Inc. v. Euton*, 120 F. Supp.2d 611, 612 (E.D. Tex. 2000). They simply have to be "substantial." *Id.*; 28 U.S.C. § 1391 (b)(2).

A substantial part of the events giving rise to Thermo-Ply's *Walker Process* anti-trust claim relating to the '182 Patent occurred in this district. Namely, the filing of an action to enforce one of OWW's Fraudulently Obtained Patents against Thermo-Ply and the use of this Court to further OWW and Kania's anti-competitive scheme. Kania, the named inventor on the '182 Patent, participated in the enforcement of one of OWW's Fraudulently Obtained Patents against Thermo-Ply. Kania voluntarily testified at a hearing in February, 2009 before this Court in the '182 Case. Kania not only voluntarily attended, but also voluntarily testified for two (2) days in assisting OWW to enforce the '182 Patent against Thermo-Ply. During the course of the hearing, this Court directly and repeatedly questioned Kania. This Court's questioning was not limited to Carol Salusso's claim for co-inventorship of the '182 Patent, as suggested in Kania's Motion. Rather, this Court repeatedly and specifically questioned Kania about what Kania claimed he "invented" that was "different" from the Silipos Silosheath. (February 2009 Hearing, Vol. 2, at p. 232, line 3 – p. 235, line 24). The Court, without knowing it at the time, drilled down to the very crux of Thermo-Ply's antitrust claim—Kania invented nothing and the claimed invention in the now-invalidated '182 Patent (and all of OWW's Fraudulently Obtained Patents)

---

[12] Section 12 of the Clayton Act, 15 U.S.C. § 22, sets forth the venue for actions against corporations, but does not specifically direct venue of an anti-trust action against an individual defendant.

were merely obvious tweaks to previously existing known products of others. Thermo-Ply's counsel, as well, questioned Kania before this Court about what Kania claimed he invented and when.

Despite the questioning of this Court and Thermo-Ply's counsel, Kania could not clearly and unequivocally differentiate the Silipos Silosheath from the invention claimed as new or novel in the '122 Patent sleeve and the '182 Patent liner, or between the sleeve and liner. (February 2009 Hearing, Vol. 2, p. 252, line 6 through p. 258, line 14). Yet Kania continued to assert under oath he was the "sole inventor" of all claims of the '182 Patent. (February 2009 Hearing, Vol. 2, at p. 249, lines 19-23). Kania never withdrew his testimony before this Court and the infringement claims in the '182 Case continued against Thermo-Ply—all the way through and until the U.S. Court of Appeals for the Federal Circuit unanimously affirmed this Court's grant of summary judgment invalidating the asserted claims of the '182 Patent on December 7, 2011.

Kania's participation in the filing and maintenance of a patent infringement lawsuit in this Court, all the way through an appeal to the Federal Circuit, on a patent Kania assisted in fraudulently procuring is clearly a "substantial" part of Thermo-Ply's *Walker Process* anti-trust claim. Venue is clearly proper here.

### D. Kania Did Not Meet His "Strong Burden" To Show That Convenience Factors "Substantially Weigh" In Favor Of Transferring Venue

Kania's alternative motion, to transfer venue of this action to the U.S. District Court for the Southern District of Ohio, should be denied. As the movant, Kania had a "strong burden" to prove that the convenience factors under 28 U.S.C. § 1404(a) favor transferring venue. *In re Triton Ltd. Securities Lit.*, 70 F. Supp.2d 678, 688 (E.D. Tex. 1999). "To meet this burden, the moving party must show that the 'balance of convenience and justice *substantially* weighs in

favor of transfer." *Abatix Corp. v. Capra*, 2008 WL 4427285, *5 (E.D. Tex. Sept. 24, 2008)(emphasis added). Kania's burden is not carried by "merely making unsupported assertions, but rather [he] must properly establish relevant venue facts by affidavit, deposition, or otherwise." *Id.*

"In an anti-trust action, a plaintiff's choice of forum is entitled to particular respect and consequently, the defendant's burden in establishing that the action should be transferred [is] heavier than in other types of actions." *Texas Utilities Co. v. Santa Fe Indus., Inc.*, 553 F. Supp. 106, 109 (N.D. Tex. 1982); *accord Continental Airlines, Inc. v. American Airlines, Inc.*, 8805 F.Supp. 1392, 1396 (S.D. Tex. 1992). Ultimately, the plaintiff's choice of forum "will not be disturbed unless it is *clearly outweighed* by other factors." *Abatix*, 2008 WL 4427285 at *6 (emphasis added).

Here, Kania attempts to carry his burden to transfer venue by first incorporating the arguments raised by OWW in its Motion to Dismiss (Dkt. No. 6) and Reply in support thereof (Dkt. No. 16). Thermo-Ply opposes those arguments by incorporating herein its arguments set forth in Thermo-Ply's Memorandum in Opposition to Defendant, The Ohio Willow Wood Company's Motion to Dismiss, or Alternatively Transfer, or Stay and Plaintiff's Request for Oral Hearing (Dkt. No. 11, at pp. 7-11), and Sur-Reply (Dkt. No. 21 at p. 5). The recent decision of the court in the Ohio Case to deny OWW's motion for jurisdictional discovery, its finding that OWW "has no evidence that Thermo-Ply's liners have been sold by Thermo-Ply or third parties in Ohio," and to stay the case until a ruling on Thermo-Ply's Motion to Dismiss issues strongly indicates that the Ohio Case is likely to be dismissed or transferred to this Court. Under these circumstances, it simply makes no sense to transfer this action to the court in the Ohio Case.

Kania's remaining arguments, with the exception of the location of documents and physical evidence, are nothing more than unsupported assertions. *See* Motion to Dismiss, Dkt. No. 18, at pp. 18-19. Kania's unsupported assertions do not carry his burden to change venue. *Abatix*, 2008 WL 4427285 at *5. With regards to the one factor Kania does support with his declaration, the location of documents and liners, Kania "fail[ed] to show that these documents are so voluminous that they would be difficult to transport. Therefore, the Court does not consider this as an important factor in the transfer analysis." *In re Triton*, 70 F. Supp.2d at 690. Indeed, this factor is "entitled to little weight in this analysis, given the ease with which they can now be copied." *Id.* Thus, this factor does not weigh in favor of transfer.

Critically, Kania failed to "specifically identify key witnesses and outline the substance of their testimony." *Abatix*, 2008 WL 4427285. As the movant, it is Kania who bears this burden. *Id.* He cannot simply rely on OWW to do so. Moreover, OWW itself did not specifically identify ***any*** non-party witnesses in its motion to dismiss or outline the substance of their testimony, either. *See* Defendant The Ohio Willow Wood Company's Motion to Dismiss, or Alternatively Tranfser, or Stay (Dkt. No. 8 at pp. 7-12).[13]

With regards to the public interest factors, Kania fails to specify why any weigh in favor of transferring Thermo-Ply's claim against Kania to the Southern District Court of Ohio. The mere fact that the Southern District Court of Ohio has "at least 6 other cases involving OWW's patents" has no bearing on whether it is more efficient for the Southern District Court to analyze Thermo-Ply's *Walker Process* anti-trust claim against Kania. Although Kania contends that Texas has no interest in this dispute, he is wrong. This Court has an interest because the

---

[13] In its Reply, OWW specified a few former employees and former patent counsel as witnesses for whom the Southern District Court of Ohio would be a more convenient venue, but OWW did so only in response to Thermo-Ply expressly noting OWW's failure to specify any "key" non-party witnesses or describe their testimony in its motion.

allegedly anti-competitive activity of enforcing the fraudulently obtained '182 Patent was directed to the Eastern District of Texas and that enforcement is part of the predicate acts underlying Thermo-Ply's *Walker Process* claim.

For the foregoing reasons, the Court should deny Kania's alternative motion to transfer venue of this action.

## CONCLUSION

For all the foregoing reasons, Thermo-Ply respectfully requests the Court deny Kania's Motion to Dismiss in its entirety.

## REQUEST FOR ORAL HEARING

Pursuant to Local Rule CV-7 (g), Thermo-Ply respectfully requests oral hearing on Kania's motion, Thermo-Ply's response, and other related filings.

Dated: January 16, 2014                    Respectfully submitted,


                                                 s/ Richard E. Fee
Richard E. Fee, Esq.
Florida Bar No. 813680
Kathleen M. Wade, Esq.
Florida Bar No. 127965
Trial Attorneys for Plaintiff
FEE & JEFFRIES, P.A.
1227 North Franklin Street
Tampa, Florida 33602
Telephone:    (813) 229-8008
Facsimile:    (813) 229-0046
E-Mail:       rfee@feejeffries.com
E-Mail:       kwade@feejeffries.com

and

J. Thad Heartfield, Esq.
Texas Bar No. 09346800
M. Dru Montgomery
Texas Bar No. 24010800
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, Texas 77706
Telephone:    (409) 866-3318
Facsimile:    (409) 866-5789
E-Mail:       thad@heartfieldlawfirm.com
E-Mail:       dru@ heartfieldlawfirm.com

Counsel for Plaintiff, Thermo-Ply, Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this the 16th day of January, 2014: **Deron R. Dacus, Esq.,** The Dacus Firm, 821 ESE Loop 323, Ste. 430, Tyler, TX 75701, *local counsel for Defendant;* **Jeffrey S. Standley, Esq., F. Michael Speed, Jr., Esq. and Michael Stonebrook, Esq.**, Standley Law Group, LLP, 6300 Riverside Drive, Dublin, OH 43017, *counsel for Defendant*.

Defendant Bruce Kania is being served with a copy of this document this 16th day of January, 2014, via regular first class U.S. Mail via his attorney: **T. Earl LeVere, Esq.,** Ice Miller, LLP, 250 W. Street, Columbus, OH 43215, with a courtesy copy being sent via e-mail.

  s/   Richard E. Fee
Counsel for Plaintiff, Thermo-Ply, Inc.